Thank you, your honors, and may it please the court. My name is Matthew Wright. I'm here for Mr. Jones, and we are here today to challenge a restitution order, a restitution order the district court correctly called huge, over $633,000 from a defendant who has been declared indigent. And your honors, we're dealing with restitution here, not guideline loss, so it's important that we not award the victim a windfall, that we do not use what the Ninth Circuit in the Anderson case called a back-of-the-envelope approach to approximate the loss. There are many reasons why this restitution award should be vacated, but I'd like to focus in my brief time today on three reasons. The first reason is because the district court used an incorrect formula to calculate the restitution amount. The second reason is the use of that incorrect formula inflated the restitution total, both in terms of the number of items or sales at issue and in terms of the multiplier of the list price rather than profit. And third, because the government simply failed to produce the evidence, either in the district court or even in this court, that would allow a court to utilize the correct formula. Now, to my first point, your honors, the district court utilized the wrong formula. It is well established in the context of the sale of counterfeit goods that you calculate a victim's actual loss for purposes of restitution by multiplying the number of... Who is the victim? The victims in this case, your honor, are the three manufacturers of the ED drugs. They are the trademark owners, and that's what makes them the victim of the statutory offense in this case. But it's their sales that we should be looking at, and any that have been lost. So you take the number of sales which were actually diverted from the victims, and by that I mean the sale that the victims would have made if Mr. Jones had never been born or if he had never committed this crime. Not, as some of the advocacy has been, we treat it as though they could force Mr. Jones to purchase at their own price. That is not what the case is sold. So you take that number, actually diverted sales, and you multiply that times the victim's profit. And this court has held that it is net profit and not gross profit. Now that distinction is not going to be hugely significant in this case other than to say it's even smaller. So we do not want to look at the list price, we look at profit. Now this... And you, that this court, that's the Baidu? How do you pronounce it? I don't know the correct way. I've been calling it Baidu, your honor. Did you, did Baidu, did it come up at all in the sentencing hearing? The Baidu case did not come up in the sentencing hearing, your honor. Did the net profits analysis come up explicitly as to restitution? I wouldn't say it came up explicitly, your honor. So that's sort of the trouble here, unless you're just agreeing that this argument you're making is subject to plain error review. Your honor, we wouldn't agree to that. We think that de novo review is appropriate. We also think, as I'll explain why we should prevail even under plain error review. But I'd ask the court to look at our objections to the PSR at page 4, where in discussing the guideline objection, which also, again, that's very well preserved. It's undisputed in terms of including the generic versions of the pills along with the total calculations. There's no doubt that's well preserved. But we say that this number, this calculation used by the guideline, the guideline calculation being different, doesn't even remotely reflect reality, nor does it reflect the victim's opportunity cost slash loss. I would also point out that in the sentencing transcript itself, on the price figure, which is getting at this idea of what the multiplier is, we say that the victims get to set the list price, which everyone believed was the retail price at the time. The victims get to set that price, but many people pay less than list price. Those objections were raised to the district court. They put the district court on notice that there was something wrong with what was going on, and actually led the court to enter a finding in our favor. That's a different argument, though. That's just saying as opposed to $10 a pill, it should be $8 a pill. That's not the concept of a net or profit argument. Your Honor, I think that we could have objected better. We could have been more specific. We could have been more forceful. Judge Lind had an extensive sentencing colloquy, but it was all about the infringement loss amount. The crux of your argument now is that their loss and restitution was almost an after-the-fact. The court made a direct equivalency with the loss amount. That's never pointed out to the district judge below, as I see it. That's correct, Your Honor. We did not explicitly state that the restitution calculation is different than the guideline calculation. I lead with that today, and I focus on that reason, not because I want to abandon our arguments that are preserved and objected to below, but because that part is extremely clear under the cases. That's why I say even if this court were to apply plain error review, we would win. If we apply plain error, though, you don't win on other aspects, necessarily. The multiplier, the number of pills, for example. That's a factual determination that even if in hindsight, wait, he still had those pills on his person, they couldn't have diverted anything. That's just a factual disagreement that wouldn't even be available to you on plain error review. Well, Your Honor, the factual finding, and I'm going to respectfully disagree with that, the factual finding in our favor in this case is, and this is quoting from page 185 and 186 of the record, and the calculation here, and that's the guideline and restitution calculation, which the court used the same, assumes that all these people would have bought these goods from Eli Lilly and the others when probably most of them wouldn't have gone to the doctor to get a prescription. So there's a preference here that I understand may not be factually accurate, but you've got yourself in this spot because of the choices that you make. That's a factual finding from the district court. Well, he says, I'm not so sure, but he clearly made the preponderance finding for the number that he then used as the multiplier. And, Your Honor, that's why I would like to focus on the method that the court used. Okay, but that gets you less relief than the entire amount. I think that the district court was utilizing the guideline calculation, and the guideline calculation doesn't look to diverted sales at all. So there's no discussion of whether or not the victims actually lost sales other than this objection, which I think put the court on notice that there was something wrong here in the district court's own finding. This is not, there may be some doubt, as the government has said, there may be some doubt about this. Probably most of the customers that Mr. Jones had wouldn't have gone to their doctors to get a prescription. And I think that's the only finding that would be plausible on this record. This district court is very experienced, and I think she recognized that there was something amiss about this, that this doesn't really reflect reality. But the distinction between the restitution calculation and the guideline calculation, that wasn't brought up with the same force. In your guilty plea agreement, you agreed restitution would be available for even relevant content. That's unusual, that's already throwing a kink into it, because normally restitution is for actual losses inflicted, but now you've enlarged in your guilty plea to get rid of all the other counts, that restriction. Your Honor, the government still has to show restitution. So we're not contesting, we are contesting on the generic, so I don't mean to leave that aside. But restitution has got to be on lost sales. And that's what the court correctly found that they didn't show here. The court never found even a single lost sale. On the contrary, what the district court said about lost sales is most of these are not lost sales. The fact is that... Your brief position is that there were zero losses. There were zero proven losses. There were zero proven losses on the record below. The government had a chance to prove diverted sales. Through any number of ways, they simply failed to do that. What we know is that the district court utilized the guideline calculation, which was based on the number of pills possessed. And that difference between the guideline calculation and between the restitution calculation is established in this court's case in Bay Dune, where the court held that there were some of the papers, the ones that were manufactured but not put into commerce... Why isn't it reasonable to assume that the purchasers of these counterfeit drugs would have purchased the actual drugs? Well, Your Honor, first, we don't want to step away from the district court's finding on that. The court found that most of them wouldn't. Second, they're buying drugs from the trunk of a man's car. We all, all of us here who are covered by good insurance plans, have the experience of filling prescriptions. Most people don't price check those. But even if they did, you don't price check it against someone selling on the Internet. These are people who cannot participate in the legitimate market, either because they don't have a legitimate medical need, they're looking for a recreational use of it, or because they themselves want to redistribute it, or because they simply can't afford the retail prices charged at the monopoly levels, which the victims are allowed to do, or it is the benefits that they get from the drug aren't worth paying those prices. That's why I say this district court's finding that most of these people never would have patronized the legitimate market is the only finding that could be supported on this record. It is simply implausible. Well, that's a district court that's making an overarching comment at the end about sort of the predicament your client put himself in. In fact, the very next sentence is one that says, but you put yourself there, and at that point you would think you would have to object and say, hey, Your Honor, let's look at restitution. We've only been talking about loss amounts here, and now that you've brought that up, that affects the restitution. No one ever said it. The government never had a chance to put in plausibility for anything. Your Honor, I think that the cases that we've cited, Fair, Chalupnik, Anderson in the Ninth Circuit, and the D.C. Circuit, the D.C. Circuit's case is Fair. These cases show that it is well established that we have to deal with actual diverted sales, and there's no finding of that. Well, okay, and they responded to that, and you filed a reply brief, right? So, for example, they cite Dwyer, and they cite Chong, and you give us no analysis of that. Well, Your Honor, I will say we did not file a reply in this case. This case came up sort of in the tail end of the sequester, and we just didn't get to it. But they cite Milstein, so we've got no analysis from you on Milstein. Your Honor, we have the 28J that we filed last week on Milstein, which says in Milstein what you're dealing with is someone who is dealing with the same customers. I'm going to take a little more time of yours just to impress on the point. 28J is not the vehicle to get a reply brief. Milstein was announced before your reply brief could have been filed. So it's not really, in my mind, a new development. But go ahead and explain what you think about Milstein. Your Honor, Milstein was a case where the defendant was selling the drugs to the same people that would be purchasing from the legitimate market. These are people who otherwise would be the ones who would buy from it. These are not people such as Mr. Jones dealt with who are outside of the legitimate market. And again, that's the district court's finding on that. We're not running from what the district court said about this record. The district court found most of these people wouldn't have patronized the legitimate market. I also want to point out we've got over 100 pills plus a bag of several caplets plus several boxes. Those are on pages 5, 6, and 7 of the PSR, which law enforcement seized. So what the government wants this court to believe is that these victims would have sold pills that the law enforcement later seized as part of their investigation in this case. The reason those came in was not because, as the government contends, the district court implicitly found that these were all lost sales from the legitimate market. They came in because the district court adopted its guideline calculation. And it is very clear under the cases that we've cited that the guideline calculation is different than the restitution calculation. This court held so in Bay Dune. Other courts that we've cited have said so repeatedly. Anderson and the Ninth Circuit. Additionally, the district court should not rely on its calculation of the loss under the sentencing guidelines to determine the amount of restitution as the two measures serve different purposes. We're dealing with a case where the district court utilized the guideline calculation formula in the restitution context. And this record doesn't support it. If the court had entered a factual finding that all of these were diverted sales, I think that could be flipped on clear error review here. Again, because what we're dealing with are not people who compete against... If we agree with you on the net profit argument, you're going to go back to resentencing anyway. Your Honor, if you agree with us on the net profit, which the court is using some sort of a list price, then the question is what happens. And we'd be happy to have a remand. I think if we go back on restitution again, we'll certainly prevail on it. We have cited the CNM case, which is this court's clear statement on what to do when the defendant says illegal sentence. Not when he's just saying restitution. When he says illegal sentence, the CNM case says the government doesn't get to go back. And I want to remind the court, in that case, the victim died. And the district court... Why wouldn't you want to go back if our mandate allowed you to then reopen the numbers calculation? If that's a factor of determination that isn't available, but you've got the legal hook through Bay Dune, why don't you want to get back? Your Honor, we're happy to go back. I just don't feel like I would be doing my client a fair service if I didn't point out the fact that there's binding precedent from the court that says even on plain error review, the government doesn't get to go back. So here the government failed to prove any evidence of profit. Even with the 11th hour evidence, they've attempted to... Was that case, remind me, I don't remember, was that a case where it was plain error, where the objection had not been made below, so the government's in a situation that the argument wasn't made, but then the defendant's arguing on appeal, you can't go back and correct it? Precisely the situation, Your Honor. It was a case called Chemical and Metal Industries. The victim died. The victim died. The defendant had mislabeled toxic chemicals. The district court cited another sentence in the case, which was sort of the other company that was responsible. There was a restitution award in that one, so that was the amount that the district court tied it to in another case. The government said, please just let us go back and let us put on the same evidence we did in the companion case, and this court said no, because you had a chance to put on the evidence of the loss, and you didn't do it. That's why I say I'm happy. I'm happy to take the remand if you'll give that to us. I think we prevail for the reasons that I've said, but I also would point out that there is that decision that says when the defendant says a legal sentence, the government doesn't get another chance, so there's no proof of even the first lost legitimate sale, and there's no proof of profits. If there are no further questions from the court at this time, I think I've reserved time for rebuttal. May it please the court. Gail Hayworth on behalf of the government. Now, this is an appeal of the district court's restitution order, and that order is the product of two numbers. The first number is the number of infringing pills the defendant sold in the U.S. market, and the second number is the wholesale price of the victim's genuine products. Now, Jones raises two arguments against the first number. The first is the only one that's preserved, which is that not all of the pills included in the restitution order infringed the victim's trademark rights because not all of them looked identical to the genuine pills. They were not the same color or they're not the same shape. Again, this is the only argument that was preserved below. He also argues on appeal for the first time that the district court plainly erred in finding that each of these counterfeit sales caused a lost sale to the victims. Regarding the second number, the wholesale price, he makes one argument in which he claims that the court should have used net profits instead of wholesale price. Regarding the standard of review, not once did Jones dispute that every item that he purchased from a foreign seller and sold in the U.S. market caused a lost sale to the victim. In fact, he asked the court to enter a restitution order that was based and premised on the idea that each counterfeit sale he made caused a lost sale to the victim. But he wouldn't have made sales for the ones that were on his person. Right, and there was evidence to show that he sold at least 32,610 pills, which was the amount included in the restitution order, and I can go into that right now. The evidence... So you're arguing that the amounts that were found on his person, to the extent that those were included, it would be harmless error? No, I'm arguing that there was evidence that he sold at least 32,610 pills. So even discounting for the amount that was found on his person that was seized or the ones involved in the controlled buys. And the reason is... So we all agree that there was email evidence that shows that he bought that amount. And then there was also sufficient evidence to show that he sold at least that same amount. The defendant concedes that the vast majority of those pills were not seized, and it's reasonable to infer that the number that was not seized was sold based on the large quantity. It was beyond personal consumption. The daily trips that he made to random parking lots, which was his M.O. for selling these counterfeit pills, his Erection Connection business cards, which shows that he built a business on selling these pills, and his admission at sentencing that he made his living selling these pills. So it's fair to infer that the amount that was not seized, which was the vast majority of that 32,610 pills, were sold. Regarding the small minority of those pills that were seized, based on the evidence... Well, it was his burden, first of all, to prove an offset for that amount. And he didn't even object that the number included in the restitution order included seized pills, let alone prove he was entitled to an offset. But even putting that aside, there was enough evidence to show that he sold at least that amount of pills. The evidence, the record shows that there were four possible seizures that resulted in 96 seized pills. And I can go through the details of that if the court would like. So the first seizure was April 2nd... Well, I don't think... I mean, we've got that in the record. But his response is he preserved it because the district judge, in those final words, said, you know, I'm not really sure of all those diverted sales. I think the only reasonable interpretation of Judge Lynn's statement there was that she was expressing some doubt that each counterfeit sale caused the lost sale. But there's... I mean, she clearly found, by a preponderance of the evidence, that each counterfeit sale caused the lost sale. And there was more than enough evidence in the record to support such a finding. So that's just a numerical calculation she made. Your position is, since it wasn't objected, it's subject to plain error review, and we don't review factual conclusions. That's your analysis for that phone? For the lost sales? For the lost diversion sales. Yes. So then the harder question is his methodological approach, where he didn't raise Bay Dune, but now he is, and if it's legal error, what's your answer to that? For lost sales under Bay Dune? No, for the Bay Dune, you wouldn't look at the retail value of each pill. You would look at the net profits. Okay, so assuming lost sales, he doesn't get to the merits of that because plain error, and that's a fact issue. Then regarding net profits, the other part, the other factor in the multiplication is that the whole idea of restitution is to compensate the victim for their losses. And Bay Dune specifically limits net profits, which was the measure of the victim's losses in that case, to that commercial setting. And so in that commercial setting, the victim, and generally net profits, is a good measure of the victim's losses because you want to reimburse the victim for the revenue that they didn't get because that sale was stolen from them, but also you want to discount that revenue by the costs that they didn't have to expend to make that sale. And so in Bay Dune, that made a lot of sense because what was counterfeited in that case was a million cigarette rolling papers, which a lot of costs were saved by not making a million sales in that regard. So net profits made sense. But here the economic context is completely different. This is a pharmaceutical industry, and the costs that go into the sale price of the drug have already been incurred by these victims. And so you're not just denying them the lost net profits that they would have got, but you're denying them these costs that they should have recouped in the sale. So just by giving them lost net profits, you're not giving them what they also lost in a diverted sale, which is... I don't follow that argument. Okay. So most of the costs that the victims would make in a sale are not going to be saved by someone else's manufacturing sale of the products because a lot of the costs that go into that sale are research and development, getting the patents, getting FDA approval, advertising. All of that has already been expended. So by having someone else... That's true for home spending product. So that invalidates the Beidoum line of reasoning. It isn't unique to pharmaceutical companies. It's not unique to pharmaceutical companies. That's correct. But I think pharmaceutical companies do have a lot more costs that are going to be incurred way before manufacturing begins. But that can be all taken into consideration. I mean, that doesn't mean the cost of popping out a pill out of a machine on a given day. In other words, you can take into account the development costs and all that. Surely they do that to decide whether they're making a profit or a loss on a product, on a particular pill. And then there's got to be some way of getting that net profit. Right. So net profit is all revenues minus all costs, right? And so the idea is that the victim is also losing recoupment of costs because they've already expended that cost in research and development, but they were... That can be considered in calculating net profits. There's a way to calculate it. Surely the company knows that it's making a net gain or net loss on a particular brand. In other words, there's a recoupment cost. There's a component in the manufacturer's price for recouping research and development and all of that. Right. And that would be in cost. It wouldn't be in net profits because net profits is above costs. So if you want to get your recoupment of costs, you can't just limit them to net profits. Who's going to get this money? The manufacturers of the genuine product, so Pfizer, Eli Lilly, and Bayer. We know who they are. Their trademark is filed, and we know who they are. So we're going to divide up that equally between the three manufacturers? No, it's based on the pills that he sold. So he sold much more of Pfizer's Viagra pills, so they'll get more of... Do we have that in the record? Yes, it's in the record. What's a good MVRA case where the compensation vastly exceeds the revenue to the defendant? Are there a lot of those? Under this theory of retail or wholesale sale value, this man owes $700,000 plus. But what did the record show in the end he actually obtained? It's a miniscule fraction, right? It was edited or amended to $600,000 plus for the restitution order. $600,000 plus going to these companies, but you must know, what did he get from his sales? It would be that amount of pills, 32. So he must have got, assuming $10 per pill, he would have got $300,000 plus. It's logical there would be MVRA cases where the restitution exceeds the criminal revenue. Right, and that's... Can you think of one? Yes. I think, well, I guess not off the top of my head, but restitution is based on the loss of the victims, not disgorgement of the defendants. That's sort of maybe what I think perhaps the judge overlooked, even if there wasn't a good objection. Restitution isn't built on loss, right? That's the crucial—she just assumed that the loss figure, the infringement amount, was going to be restitution, and then arguably he didn't ever object and correct her. But you are arguing today that the loss number for the guidelines, what is it, 2B5.3, determines the restitution. No, they're distinct calculations. They have distinct purposes, and therefore they have distinct calculations. But I'm arguing in this case, as FAIR, one of the cases cited by Jones, acknowledges that sometimes they equate. Sometimes they come out to the same number, and here is a case where they do. Okay. So going back to—so he sold 32,610 pills. The court clearly found that each of those pills infringed the victim's trademarks by making— like clarifying that the victim's own trademark rights, not just in the trade dress of the pill. If I were to put on evidence that it is yet to turn a profit on Viagra, I could see your argument. We have not yet recouped our research and development and cost. If I put on that kind of evidence, I could see your argument. But there has to be some evidence if that's true, right? Right. Where is that evidence? Well, the victim's impact statements demonstrated that the extraordinary amount of cost that pharmaceutical companies expend in research and development, it was like $800 million to $1.3 billion on average. But on top of it, Viagra, they've got—they know what their costs are. Have they recouped it or not? Is that in their record? They're all their costs. Their costs are not in the record. Okay. No, Your Honor. Is that the Rule 10 item or not? Is that the item you're trying to supplement into the record? Or that wouldn't reveal that either? No, that doesn't reveal their costs. But it's the victim impact statements that should be supplemented. But there was evidence from which you could reasonably infer that their costs were minimal or de minimis, and that was based on the foreign suppliers were able to recoup all of their costs plus a profit on $0.30 per pill. And so it was reasonable to infer that the victims, their manufacturing, their average manufacturing costs were around that or less. Well, not to include research and development and all of that. Right. We just don't know whether Viagra is now a profitable product or not. Sometimes it might take 10 or 15 years for a drug company to break even on a particular product. But we don't know if that's true with regard to these products, do we? Well, we know that their research and development costs would not get that back if you just give them net profits. We don't know that. They may have already recouped their research and development. We don't know that. There's got to be evidence one way or the other of that. And the manufacturing costs for the foreign suppliers suggests that. No, it doesn't because they have once Viagra, their different whatever Viagra is, that company, Pfizer Research, came up and created that product. Then the Chinese companies just copied the formula basically. They didn't have research and development. They didn't have FDA costs. They didn't have any of that. It's not apples and oranges. It's apples and oranges. It's not the same calculation. Right. They didn't have any of that. You're right. So I'm suggesting that the $0.30 per pill shows what the manufacturing costs were. But manufacturing costs is not necessarily the benchmark for net profits. There's some way of getting at these companies' net profits. I know their accountants know whether they're making a profit on these pills or not, and there's some way of getting at that. Right. My argument is that there is definitely a way of getting at net profits, but net profits is not going to compensate them for their loss. You could say it and say it and say it, but that is not going to make it true. Because if you're not giving them – They can recoup their research and development costs. They need to tell the court where they are. Are they at a break-even point of Viagra yet or not? Partly your answer would be if there's no objection along those lines, you wouldn't know you needed to develop this evidence, right? Yes, that's true. But let's say that because of other error, when you think about remanding, you've heard your opposing counsel suggest that that's not even available to us. In other words, a remand that would allow the government to develop evidence that now is being contended doesn't exist or isn't perfectly developed. What's your thought about options on remand if that's? Well, I definitely disagree with that. The cases where they don't allow a remand with an open record are distinguishable. CNM, which Jones cites, is the government – there was absolutely no finding of loss, and the government conceded that they put in no evidence, even though evidence was available to them. And in that case, they decided not to give the government a second chance on that. And the other case, Fair, the government – it was hotly disputed whether or not disgorgement could equivalent or could be used as proof of the victim's losses. The defendant objected, said no, and the government made no effort at all to respond to that, and that's clearly not what we have here. The government put on evidence of loss. A lot of it suggesting evidence sufficient to show a reasonable inference that there was diverted sales, and responded when the defendant actually made an objection with adding more evidence. Plus, I argue that the case law is not entirely clear here for guiding the government as far as lost sales and lost net profits and the proper calculation of restitution in this pharmaceutical context, given Milstein and given Baydon, which suggests that for an exclusive seller like what we have here, there is a lost sale for every – when you have an exclusive seller, the seller suffers a loss every time a counterfeit good is put into the market to compete with the genuine good, which is what we have here. So Baydon would support the lost sales analysis, and Milstein would support the net profits versus wholesale price use. So given the case law, given the efforts that the government made, I would say special circumstances exist here to give the government a chance on remand. And the reason you're not asserting the appeal waiver is the argument exceeds the statutory – the case law maximum? Yes. Under CNM, that constitutes one of the exceptions to the appeal waiver. All right. If the court has no further questions for me, then I will proceed. Your Honors, we do have a dispute about what the district court did. I'd like to point out that there was quite a bit of discussion with opposing counsel about this net profit measure and how the record, even after the attempt to supplement the record, is still silent on the victim's costs because we have nothing about profits, certainly nothing in the record below, because the court was using the list price. This is one indication that the court was not doing a separate restitution calculation, as is clearly required under this court and other courts' precedent. Another indication that the court was not determining diverted sales was that the court itself said so, not I express some doubt about whether really all of these probably, most of your customers wouldn't have gone to their doctor. That means they wouldn't have gone to a legitimate pharmacy. That pharmacy wouldn't have made the sale either from its excess stock or from they purchased somewhere else. They go back to the wholesaler. The wholesaler doesn't make the sale from its excess stock or things that would otherwise expire. The wholesaler then goes back to the manufacturer, and they make the sale. Also, the district court included all of the pills that Mr. Jones was found with at the time he was arrested and all of the controlled buys before, described on pages 5, 6, and 7 of the record. I would submit that the only reading from this, contrary to what the government says, is that the district court didn't care about diverted sales. That method is not what was utilized in the court below. It was items possessed. It was precisely the same number of items the court found under the guideline calculations, which was the infringement amount, which this court has said there's evidence that can support a guideline enhancement, but it doesn't support restitution. That's what the district court did, and we use the court's own words when it says most of these people wouldn't have gone to their doctor. That's step one on the chain of events that have to happen before the victim suffers a lost sale in the real world market. So it is not the case that the district court clearly found that each and every pill Mr. Jones possessed resulted in a diverted sale. That would be a reversible finding if the court found it, but the court did not find that. The court relied solely on the guideline calculation, and that's why I say as a methodological factor that first sort of factor in the multiplication problem is still very much a problem in this case. The dismissed conspiracy count, there was an overarching conspiracy count, wasn't there? I think that's correct, Your Honor. And it didn't list the total number of pills. There was no over 32,000. It wasn't put in there? Your Honor, it wasn't, but I think that, again, we do dispute, again, the generics. We dispute whether the generics are properly included, and I don't want to come off of that, but let's just assume that every pill had the victim's trademark right on the pill. We still have this problem that that would violate the victim's trademark right. It would give rise to criminal liability. It would give rise to a guideline enhancement, as in Baydoun. That doesn't mean that the victim lost a sale. And I think that your question, Judge Higginson, about can you think of a case where the MVRA loss vastly exceeds the defendant's gain is important because we have lots of cases that say you don't use the defendant's gain as a measure of MVRA loss. Well, the only reason that comes up is because typically MVRA loss is even smaller than the defendant's gain. So this is a situation, in other words, where the government is seeking to give the victims a windfall, sales that the district court found, many thousands of sales that never would have been made in a legitimate market and certainly would have never worked their way back up to the manufacturer where it makes the sale, that Mr. Jones has to pay them what's basically a monopoly price because of that. In other words, it's almost like a rent or a royalty that they're extracting rather than what they actually lost. All Judge Lind would have been able to address all of this if any version of that objection had been made. Presumably you've heard the government saying, well, maybe we could prove it, maybe not. So absolutely no notice. Your Honor, we know they couldn't prove it about the pills he had in his hand and the pills that law enforcement seized. We know they couldn't prove it of that. Now the government says there may be additional pills, we can prove that there were that many he sold, but it was the exact same number of pills that were used. It was the guideline calculation adopted completely. I'd also just like to point out in the Ninth Circuit's Anderson case, dealing with the price point, it's not really clear whether they objected on a number of items at issue. That's plain error. The Ninth Circuit says the defendant didn't raise this, but still it's clear from our cases that this formula, which is actual diverted sales, and we're talking about profits, not list price. The one other thing I want to point out quickly is that in C&M, the government says that they conceded that there was no evidence available. That's not true. There was a companion case where they made the restitution case. The district court cited that case. So there's another record, almost judicially noticeable evidence of loss, where a breadwinner dies as a result of the victim. So it's very clear, right? Unlike this case, it's very clear what that number would be. And this court said, not only do you lose, but you don't get a second bite at it. The court has no further questions. Thank you for your time.